**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

BENNIE JAMES JOHNSON, III,

        Plaintiff,

    v.

WARDEN BOBBITT, et al.,

        Defendants.

CIVIL ACTION NO.: 6:20-cv-76

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed this action, asserting claims under 42 U.S.C. § 1983.  Doc. 8.[1]  This matter is before the Court for a frivolity screening under 28 U.S.C. § 1915A.  For the reasons stated below, I **RECOMMEND** the Court **DISMISS** the following portions of Plaintiff's Amended Complaint:

1.      Claims Number 2, 3, and 4 for "negligence" and violations of prison policy and procedure against Defendants Bryd, Carter, Hall, Hamilton, Howard, Johnson, Popovich, and unnamed officers;

2.      Claim Number 5 for deprivation of property against Defendants Jordan and McCoin;

3.      Claims Number 6 and 9, an Eighth Amendment claim for missing meals, against Defendants Carter and Howard;

4.      Claims Number 8 and 12, which are conditions of confinement claims, against Defendants Bryd, Carter, Howard, Johnson, and Lejet;

---

[1]      Plaintiff filed his Complaint on August 5, 2020.  However, on December 14, 2020, Plaintiff filed an Amended Complaint.  Docs. 6, 8.  Plaintiff's initial Complaint had not yet been served on any Defendants, and none of the Defendants have filed any responsive pleading which would join them to the case; thus, Plaintiff may amend as a matter of right.  Fed. R. Civ. P. 15(a); Oliver v. Fuhrman, 695 F. App'x 436, 439 (11th Cir. 2017) (citing Brown v. Johnson, 387 F.3d 1344, 1348–49 (11th Cir. 2004)).  Therefore, the Court will treat Plaintiff's Amended Complaint as the operative Complaint.

5.      Claims Number 10 and 11, Eighth Amendment conditions of confinement claims related to Tier II segregation, against Defendant Johnson;

6.      Claim Number 14 against Defendant Johnson; and

7.      Claims against Defendants Deputy Warden of Care, Jackson, and Dasher.

However, I **FIND** that some of Plaintiff's claims may proceed.  Specifically, the Court will direct service, by separate Order, of:

1.      Claims Number 1 and 7, a procedural due process claim concerning Plaintiff's assignment to Tier II, asserted against Defendants Bryd, Lejet, Johnson, Smart, and Bobbitt; and[2]

2.      Claim Number 13, an Eighth Amendment claim, against Defendant Johnson.

To be clear, if the Court adopts these recommendations, only Plaintiff's Claim Number 1 against Bryd, Lejet, Johnson, Smart, Claim Number 7 against Defendant Bobbitt, and Claim Number 13 against Defendant Johnson will remain pending; all claims against all other named Defendants will have been dismissed.

## PLAINTIFF'S CLAIMS[3]

Plaintiff, proceeding pro se, brings this action under § 1983, asserting a series of claims with limited factual details.  Doc. 8.  Plaintiff's allegations are contained in a numbered list, with each enumeration setting out a legal theory followed by a terse factual allegation.  Id. at 2–3.

---

[2]      In Plaintiff's initial Complaint he listed certain Defendants in the "Parties" section of the complaint form, doc. 1 at 4, and the Clerk of Court designed those individuals as Defendants in the Court's electronic docketing system.  However, Plaintiff also identified other individuals in his Amended Complaint—specifically, individuals with the last names Bryd, Popovich, Hamilton, Hall, Jordan, McCoin, and Smart.  These individuals were not designated as Defendants on the electronic docket.  The Court construes Plaintiff's Amended Complaint as attempting to name these individuals as Defendants, and, therefore, directs the Clerk of Court to add these individuals to the case as Defendants.  Although all of these individuals should be named as Defendants in the case, only claims against Defendants Bryd, Lejet, Smart, Johnson, and Bobbitt will remain pending, if the Court adopts the recommendations herein.

[3]      All allegations set forth here are taken from Plaintiff's Amended Complaint.  Doc. 8.  During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

However, Plaintiff's labeling of his claim often does not match up to the claims he appears to be trying to assert under § 1983. For example, Plaintiff labels Claim Number 9 as "negligence [and] pain and suffering and cruel and unusual punishment;" however, he describes Defendant Howard intentionally depriving him of lunch. Id. at 3. Similarly, Claim Number 1 is labeled "False imprisonment, cruel and unusual punishment, negligence," but contains factual allegations related to housing in Tier II without an administrative segregation hearing, which implicates a procedural due process claim. Id. at 2. These examples are illustrative of all of Plaintiff's claims. In reviewing Plaintiff's Complaint, the Court is mindful of Plaintiff's status as a pro se litigant.[4] Thus, the Court has endeavored to read Plaintiff's Complaint for the factual assertions he makes, disregarding some of the incorrect legal conclusions and theories Plaintiff assigned to particular events, in order to determine if a claim survives frivolity review. Plaintiff's claims can be summarized as follows:

In Claims Number 1 and 7, Plaintiff alleges Defendants Bryd, Bobbitt, Johnson, Lejet, and Smart assigned him to Tier II administrative segregation but never provided Plaintiff with a 96-hour administrative segregation hearing. Doc. 6 at 2.

In Claims Number 2, 3, 4, and 5, Plaintiff brings a series of negligence claims for failure to follow various prison policies and procedures, including: placing Plaintiff with a "close security" inmate despite Plaintiff having a "medium" security designation; Defendants Bryd, Carter, Popovich, Howard, Hamilton, and Hall failing to do rounds and check on inmates; and

---

[4]     Pro se complaints are held to a less stringent standard than formal pleadings drafted by lawyers and the Court has a duty to construe pro se filings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). Courts must "liberally construe documents filed by pro se parties" in order to "to create a better correspondence between the substance of a pro se [pleading]'s claim and its underlying legal basis." Torres v. Miami-Dade County, 734 F. App'x 688, 691 (11th Cir. 2018) (quoting Castro v. United States, 540 U.S. 375, 381–82 (2003)). "Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a pro se party's complaint and focus on the content and substance of the allegations." Id.

Defendants Jordan and McCoin failing to perform inventory resulting in Plaintiff's property being stolen.  Id. at 2.

Both Claims Number 6 and 9 are claims against Defendants Carter and Howard for failing to provide Plaintiff with meals.  Id. at 2–3.

Plaintiff brings conditions of confinement claims in Claims Number 8 and 12 against Defendants Bryd, Carter, Howard, Johnson, and Lejet.  In those claims, Plaintiff alleges he was not permitted to take a shower for five days and his cell was not cleaned for one month.  Id.

Similarly, Plaintiff complains of the conditions of Tier II in Claims Number 10 and 11, based on the restricted phone and yard time, as well as being on lockdown for 24 hours a day. Id. at 3.  Claims Number 10 and 11 are asserted against Defendant Johnson.  Id.

Plaintiff alleges in Claim 13 Defendant Johnson ordered another inmate to attack him in retaliation for Plaintiff contacting a human rights group and, further, that Defendant Johnson transferred Plaintiff to a cell where he was in danger and ignored Plaintiff's pleas for help.  Id.

Finally, in Claim 14, Plaintiff complains Defendant Johnson transferred him to Ware State Prison, which was under lockdown at the time of his transfer.  Id.  As a result, Plaintiff's ability to contact the courts and perform research was restricted.  Id.

## STANDARD OF REVIEW

A federal court is required to conduct an initial screening of all complaints filed by prisoners and plaintiffs proceeding in forma pauperis.  28 U.S.C. §§ 1915A(a), 1915(a).  During the initial screening, the court must identify any cognizable claims in the complaint.  28 U.S.C. § 1915A(b).  Additionally, the court must dismiss the complaint (or any portion of the complaint) that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  Id.  The

4

pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993).

A claim is frivolous under § 1915(e)(2)(B)(i) if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).  In order to state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.

## DISCUSSION

### I.     Claims Number 2, 3, and 4: Negligence Claims

Plaintiff brings negligence claims in claims Number 2, 3, and 4 against various Defendants for violations of prison policy and procedure.  Doc. 8 at 2.  Specifically, Plaintiff brings a negligence claim for his placement with a "close security" inmate despite his designation as a "medium security" inmate against Defendant Johnson.  Id.  Additionally, he complains Defendants Bryd, Carter, Popovich, Hall, Hamilton, and Howard negligently failed to make rounds and check on inmates and unnamed officers and Defendant Johnson falsified documents indicating they checked on inmates.  Id.

Even taking Plaintiff's assertions as true and assuming Defendants actions violated prison policy and procedure, Plaintiff fails to state a cognizable claim under § 1983.  Violations of prison policies or procedures, standing alone, do not infringe upon an inmate's constitutional

rights.  See Fischer v. Ellegood, 238 F. App'x 428, 431 (11th Cir. 2007) (finding plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); see also Sandin v. Conner, 515 U.S. 472, 481–82 (1995) (holding prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); United States v. Caceres, 440 U.S. 741, 751–52 (1979) (holding mere violations of agency regulations do not raise constitutional questions).  Put simply, Plaintiff's contention surrounding Defendants' alleged violation of prison protocols or procedures, whether in housing inmates or making rounds, does not amount to a constitutional violation.

To the extent Plaintiff seeks to bring ordinary state law negligence claims, such claims would also fail.  The Georgia Tort Claims Act ("GTCA"), O.C.G.A. § 50-21-20 et seq., "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a).  The GTCA provides a limited waiver of the State's sovereign immunity for actions alleging torts committed by state officers or employees; however, it does not waive the State's sovereign immunity for tort actions brought against the State in federal court.  O.C.G.A. § 50-21-23(b) ("The [State of Georgia] does not waive an immunity with respect to actions brought in the courts of the United States."); Williams v. Ga. Dep't of Corr., No. 6:11-cv-11, 2012 WL 2839454, at *5 (S.D. Ga. May 2, 2012).  As a result, the Georgia Department of Corrections, if substituted for the individually named Defendants, would be immune to suit in federal court.

Accordingly, Plaintiff's negligence claims against Defendants Bryd, Carter, Popovich, Hall, Hamilton, Howard, and Johnson should be **DIMMISSED**.

6

## II.      Claim Number 5: Property Claim

In Claim Number 5, Plaintiff brings a negligence claim against Defendants Jordan and McCoin for failing to inventory his property, which resulted in the property being stolen.  Doc. 8 at 2.  As explained above, such state-law negligence claims are barred by the GTCA.  The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a).  Pursuant to the GTCA, "A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."  Id.  This immunity applies even when the officer is accused of committing unauthorized torts that are intentional or malicious.  See Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2001).

Georgia law further provides tort claimants must "name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually."  O.C.G.A. § 50-21-25(b).  In other words, if a state officer or employee is sued for a tort committed while acting within the scope of his or her official duties or employment, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant."  Id.  However, substituting the Georgia Department of Corrections for the individually named Defendants in their individual capacities would be futile in this case.  The GTCA provides a limited waiver of the State's sovereign immunity for actions alleging torts committed by state officers or employees; however, it does not waive the State's sovereign immunity for tort actions brought against the State in federal court.  O.C.G.A. § 50-21-23(b) ("The [State of Georgia] does not waive an immunity with respect to actions brought in the courts of the United States."); Williams, 2012 WL 2839454, at *5.  As a result, the Georgia Department of Corrections, if substituted for the

Case 6:20-cv-00076-JRH-BWC    Document 9    Filed 12/28/20    Page 8 of 19


individually named Defendants, would be immune to suit in federal court.  Accordingly, I

**RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants Jordan and McCoin

for negligent handling of his property.

### III.    Claims Number 6 and 9: Failure to Provide Meals

In Claim Number 6, Plaintiff asserts Defendant Carter provided Plaintiff with a peanut

butter sandwich and a banana for dinner on March 3, 2020, but provided the rest of the dorm

with a dinner tray.  Doc. 8 at 2.  Likewise, in Claim Number 9, Plaintiff alleges Defendant

Howard failed to provide Plaintiff lunch on March 22, 2020.  Id. at 3.  Based on this, Plaintiff

appears to bring Eighth Amendment claims against Defendants Carter and Howard for their

failure to provide him with meals.  Id.

Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel

and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and

medical care."  Farmer, 511 U.S. 825, 832 (1994).  To determine whether an inmate's Eighth

Amendment rights were violated by a deprivation, courts must examine the alleged violation

both objectively and subjectively.  "First, the deprivation alleged must be, objectively,

sufficiently serious."  Id. (quotation omitted).  Second, the mental state of the prison official

must have been "one of deliberate indifference to inmate health or safety."  Id.

The "[w]ithholding of food does not *per se* constitute an objectively serious deprivation

in violation of the Constitution."  Adair v. Okaloosa Cnty. Jail, No. 3:07-cv-425, 2008 WL

564616, at *2 (N.D. Fla. Feb. 27, 2008) (citing Reed v. McBride, 178 F.3d 849, 853 (7th Cir.

1999)).  Rather, "[t]he circumstances, nature, and duration of a deprivation of life's necessities

must be considered in determining whether a constitutional violation has occurred."  Id.  "In

general, the severity and duration of deprivations necessary to state a constitutional violation are

inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." Id. (quoting Deapain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001)); see also Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) (noting the "Eighth Amendment requires that inmates be provided well-balanced meals, containing sufficient nutritional value to preserve health" but finding that "[w]hether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation").

Receiving "a minimal amount of food for a limited number of days" is not an Eighth Amendment violation. Oliver v. Gafford, No. 5:15-cv-153, 2018 WL 1938308, at *8 (N.D. Fla. Jan. 19, 2018) (quoting Hernandez v. Fla. Dep't of Corrs., 281 F. App'x 862, 865 (11th Cir. 2008)); see e.g., Hernandez, 281 F. App'x at 866 (affirming dismissal for failure to state a claim when the plaintiff was routinely deprived of lunch "five days a week for about five months" when the plaintiff was not "deprived of the two other daily meals" and did not allege "physical harm" from the deprivation of food which "posed an unreasonable risk of serious damage to his health"); Berry v. Brady, 192 F.3d 504, 506–08 (5th Cir. 1999) (finding no Eighth Amendment violation in denying an inmate eight meals over seven months and noting plaintiff failed to allege specific physical harm and did not claim he lost weight, suffered other adverse physical effects, or his health was at risk); Gardner v. Beale, 780 F. Supp. 1073 (E.D. Va. 1991) (providing prisoner with only two meals per day, with an 18-hour interval between dinner and brunch, did not satisfy objective component of Eighth Amendment standard).

"[C]ourts that have found constitutional violations when inmates were deprived of food have done so only when presented with more serious violations." Adair, 2008 WL 564616 at *3;

see e.g., Simmons v. Cook, 154 F.3d 805, 809 (8th Cir. 1998) (finding a viable Eighth Amendment claim when plaintiffs, during a 32-hour confinement, "missed four consecutive meals because their wheelchairs could not reach the food tray slots" and "were unable to have a bowel movement" because of the lack of "the necessary supplies or assistance"); Cooper v. Sheriff of Lubbock Cnty., 929 F.2d 1078 (5th Cir. 1991) (finding unconstitutional the prison's failure to feed a prisoner any food for 12 consecutive days); Dearman v. Woodson, 429 F.2d 1288, 1289 (10th Cir. 1970) (finding a viable Eighth Amendment claim when a prisoner was denied any food for over 50 hours); Lunney v. Brureton, No. 04-cv-2438, 2005 WL 121720, at *6 (S.D.N.Y. Jan. 21, 2005) (finding an inmate's allegations that his meals were regularly spoiled or improperly prepared on "numerous occasions" and the inmate could either eat the meals and become sick or not eat and suffer from malnutrition, satisfied the Eighth Amendment's objective component).

Here, Plaintiff alleges Defendant Carter provided him with a different meal than the rest of the dorms but providing Plaintiff with a peanut butter sandwich and a banana, regardless of what the rest of the dorm ate, comes nowhere near cruel and unusual punishment. Additionally, Defendant Howard failing to provide Plaintiff with lunch on one day does not rise to the level of an Eighth Amendment claim. The denial of a single meal for which Plaintiff seeks relief does not show a violation which, viewed objectively, is sufficiently serious to implicate the Eighth Amendment. See Hernandez, 281 F. App'x at 862 (finding no constitutional violation even when the inmate was routinely deprived of lunch). Furthermore, Plaintiff does not allege he suffered any adverse physical effects from missing the meal. Thus, I **RECOMMEND** the Court **DISMISS** Plaintiff's Eighth Amendment claims against Defendants Carter and Howard.

**IV.     Claims Number 8 and 12: Conditions of Confinement**

Plaintiff brings two conditions of confinement claims, Claim Numbers 8 and 12.  Doc. 8 at 2–3.  First, in Claim Number 8, Plaintiff avers the denial of a shower for five days by Defendants Bryd, Carter, Howard, Johnson, and Lejet violated his rights.  Id. at 3.  Additionally, in Claim Number 12, Plaintiff alleges there was not a cell cleanup for one month, from March 3, 2020 to April 4, 2020, and names Defendant Johnson.  Id. at 3.

The Eighth Amendment governs the conditions of a prisoner's confinement.  Helling v. McKinney, 509 U.S. 25, 31 (1993).  Generally, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  "To mount a challenge to a condition of confinement, a prisoner must first prove the condition he complains of is sufficiently serious to violate the Eighth Amendment."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). "The challenged condition must be extreme."  Id.  "At the very least [the prisoner must show the] condition of his confinement poses an unreasonable risk of serious damage to his future health or safety."  Id. (quotations and alteration omitted).  The prisoner must also show that prison officials acted with deliberate indifference to the condition at issue.  Id.; Brown v. Pastrana, 446 F. App'x 270, 272 (11th Cir. 2011).

Although "[t]he Constitution does not mandate comfortable prisons," Farmer, 511 U.S. at 832, it does not allow a prisoner to be exposed to an objectively "unreasonable risk of serious damage to his future health."  Chandler, 379 F.3d at 1289 (quoting Helling, 509 U.S. at 35). Moreover, the conditions of confinement must meet "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102–03 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958) (internal quotation marks omitted)).  To state a

successful Eighth Amendment claim, a plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Brooks v. Warden, 800 F.3d 1295, 1303 (11th Cir. 2015).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. "While prison officials must furnish prisoners with adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates, the Constitution does not mandate comfortable prisons[.]" Grimes v. Thomas, No. 2:12-CV-01909, 2014 WL 554700, at *5–6 (N.D. Ala. Feb. 12, 2014) (internal citations and punctuation omitted), *appeal dismissed*, (Sept. 17, 2014). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. Therefore, extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. See Chandler, 379 F.3d at 1298.

Plaintiff's allegation that he was denied a shower for five days does not rise to the level of a constitutional violation. That is, five days without a shower does not violate contemporary standards of decency. See e.g., Fischer v. Ellegood, 238 F. App'x 428, 429–30, 433–34 (11th Cir. 2007) (finding no constitutional violation where for five days, seven inmates were confined to a single cell with broken plumbing, were forced to sleep on cement floors and soiled linens, and were denied showers). Similarly, Plaintiff's allegation that no cell cleanup occurred for 30 days fails to state a cognizable conditions of confinement claim. Although Plaintiff alleges no cell cleanup occurred for one month, he does not include any details about the state of

the cell as the result of no cleaning.  In fact, Plaintiff's allegation in Claim Number 12 only

mentions the lack of cleanups violated prison protocol.  Doc. 6 at 3.  As described above, a

violation of prison protocol alone does not amount to a constitutional violation.  Moreover,

Claim Number 12 cannot proceed because a generalized allegation that a cell is unclean does not

rise to the extreme deprivation required for a conditions-of-confinement claim under the Eighth

Amendment.  See Hill v. Hall Cnty. Detention Ctr., No. 2:19-CV-00256, 2012 WL 4326209, at

*3 (N.D. Ga. Aug. 27, 2012) ("Plaintiff's allegations fail to make a plausible case that any of the

foregoing requirements has been met.  Generalized allegations about sharing "dirty" cells and

using "filthy" showers . . . do not begin to approach the 'extreme deprivations' needed to support

a successful conditions-of-confinement claim."); Joe v. Nelson, No. 5:14-cv-0184, 2014 WL

2930856, at *2 (M.D. Ga. June 27, 2014) (holding a claim that a cell was only cleaned 3 times

over 40 days does not violate the Eighth Amendment when the plaintiff's complaint did not

suggest the conditions posed an unreasonable risk of serious damage to the plaintiff's health or

offended contemporary standards of decency); Pierce v. Carson, No. 4:12-cv-0018, 2014 WL

5643336, at *13 (N.D. Ala. Nov. 4, 2014) (explaining a cell covered in dirt and grime is not a

condition that rises to the level of an Eighth Amendment violation).  Accordingly, I

**RECOMMEND** the Court **DISMISS** Plaintiff's Claims Numbers 8 and 12 against Defendants

Bryd, Carter, Howard, Johnson, and Lejet.

**V.     Claims Number 10 and 11: Tier II Conditions**

In Claims Number 10 and 11, Plaintiff protests conditions related to his placement in Tier

II administrative segregation, including lack of yard time, no call period or phone access, and

remaining locked down for 24 hours a day.  Doc. 8 at 3.  The Court construes these claims as

Plaintiff asserting an Eighth Amendment claim related to these conditions, as Plaintiff labels

Claim Number 10 as "Cruel and Unusual Punishment and Intentional Infliction of Emotional Distress."

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349, 101 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.

Even accepting Plaintiff's assertions as true, he does not plausibly state an Eighth Amendment claim. Plaintiff contends he had restrictions placed on as phone usage and yard time and was required to remain on lockdown 24 hours a day. Doc. 8 at 3. The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also Gholston v. Humphrey, No. 5:12-CV-97, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit). Plaintiff does not allege a plausible claim that the conditions of

confinement in the Tier II unit constitute a deprivation of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 349. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's Claims Number 10 and 11 under the Eighth Amendment against Defendant Johnson.[5]

## VI.     Claim Number 14: Transfer to Ware State Prison

Plaintiff alleges Defendant Johnson had Plaintiff transferred to Ware State Prison, which Plaintiff contends is a "much worse prison" that was on lockdown at the time of Plaintiff's transfer, which restricted Plaintiff from contacting the courts and doing research. Doc. 8 at 3 (Claim Number 14). Plaintiff provides no other details and does not explain why Defendant Johnson had him transferred.

First, Plaintiff cannot bring a claim for the transfer to Ware State Prison alone. Prisoners do not have a constitutional right to remain at a particular penal institution. Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986); see also Meachum v. Fano, 427 U.S. 215, 227, (1976) (transfer without hearing does not violate Constitution); Tate v. Brannen, No. 5:11-CV-249, 2012 WL 6968457, at *3 (M.D. Ga. Jan. 23, 2012), *report and recommendation adopted*, 2013 WL 395976 (M.D. Ga. Jan. 31, 2013) ("Plaintiff has no constitutional right to be transferred from a particular prison."). Accordingly, Plaintiff's fails to state a constitutional claim for his transfer to Ware State Prison.

Moreover, Plaintiff alleges the transfer restricted his ability to contact the courts and do research. Doc. 8nat 3. The Court construes this as an access-to-courts claim. "[P]risoners have a constitutional right of access to the courts." Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir.

---

[5]         Plaintiff's Claims Number 1 and 7 assert procedural due process claims against Defendants Bryd, Lejet, Johnson, Smart, and Bobbitt concerning Plaintiff's assignment to Tier II. Those claims will proceed.

2006); see also Lewis v. Casey, 518 U.S. 343, 343 (1996); Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment.").  To have standing to bring an access-to-courts claim, the "inmate alleging a violation of the right of access to the courts must show an actual injury."  Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998) (citing Lewis, 518 U.S. at 349–50).  Not all denials of access result in injury.  Lewis, 518 U.S. at 354–56.  Rather, plaintiffs must show the denial of access related to a non-frivolous, arguable underlying claim.  Harrison v. United States, 577 F. App'x 911, 913 (11th Cir. 2014).  Incarcerated individuals must identify the underlying claim with sufficient enough detail to "give fair notice to the defendants" and show "the 'arguable' nature of the underlying claim is more than hope."  Christopher v. Harbury, 536 U.S. 403, 416 (2002); Arthur v. Comm'r, Ala. Dep't of Corr., 680 F. App'x 894, 903 (11th Cir. 2017); Harrison, 577 F. App'x at 912–13 ("[A] litigant asserting an access claim must identify a colorable underlying claim, ancillary to the right of access to the courts."); Cunningham v. Dist. Attorney's Office, 592 F.3d 1237, 1271 (11th Cir. 2010); Barbour, 471 F.3d at 1226.

Here, Plaintiff alleges no facts indicating any legal proceeding has been impeded.  That is, Plaintiff fails to show an actual injury as required to bring an access-to-courts claim.  Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's Claim Number 14 against Defendant Johnson.

## VII.  Plaintiff's Claims Against Defendants Deputy Warden of Care, Jackson, and Dasher

Plaintiff, in his initial Complaint, names Defendants Deputy Warden of Care, Jackson, and Dasher.  Doc. 1 at 9.  Defendants Deputy Warden of Care, Jackson, and Dasher still appear as Defendants on the electronic docket for the case.  In Plaintiff's Amended Complaint, he does

not make any factual allegations in his against these Defendants.  The Eleventh Circuit has held a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation.  Douglas v. Yates, 535 F.3d 1316, 1321–22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  As to Deputy Warden of Care, Jackson, and Dasher, Plaintiff fails to describe who these individuals are or how they are connected to any constitutional violation.  Accordingly, I **RECOMMEND** the Court **DISMISS** claims against Deputy Warden of Care, Jackson, and Dasher.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** the following portions of Plaintiff's Amended Complaint:

1. Claims Number 2, 3, and 4 for "negligence" and violations of prison policy and procedure against Defendants Bryd, Carter, Hall, Hamilton, Howard, Johnson, Popovich, and unnamed officers;

2. Claim Number 5 for deprivation of property against Defendants Jordan and McCoin;

3. Claims Number 6 and 9, an Eighth Amendment claim for missing meals, against Defendants Carter and Howard;

4. Claim Number 8 and 12, which are conditions of confinement claim, against Defendants Bryd, Carter, Howard, Johnson, and Lejet;

5. Claims Number 10 and 11, Eighth Amendment conditions of confinement claims related to Tier II segregation, against Defendant Johnson;

6. Claim Number 14 against Defendant Johnson; and

7. Claims against Defendants Deputy Warden of Care, Jackson, and Dasher.

However, I **FIND** that two of Plaintiff's claims may proceed.  Specifically, the Court will direct

service, by separate Order, of:

1.      Claims Number 1 and 7, a procedural due process claim concerning Plaintiff's
        assignment to Tier II, asserted against Defendants Bryd, Lejet, Johnson, Smart,
        and Bobbitt; and

2.      Claim Number 13, an Eighth Amendment claim, against Defendant Johnson.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't</u>

<u>Station #4</u>, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 2020 WL 6039905, at *4; 11th

Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 28th day of December, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA